In re Jerry Dean **WOERNER**, d/b/a **Woerner and Company Real Estate, f/d/b/a Woerner's Service Station, Joan Katherine Woerner, Debtors.**

Jerry Dean **WOERNER and Joan Katherine Woerner**, d/b/a **Woerner and Company Real Estate**, d/b/a **Woerner Service Station, Plaintiff,**

v.

**FARMERS ALLIANCE MUTUAL INSURANCE CO., A Corporation organized under the laws of the State of Kansas, Defendant.**

Bankruptcy No. 80–40770.
Adv. No. 81–0041.

United States Bankruptcy Court,
D. Kansas.

Jan. 28, 1982.

John E. Bohannon, Topeka, Kan., for debtors.

J. Steven Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for Farmers Alliance.

Cary L. Standiferd, Trustee, Topeka, Kan.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 7 proceeding, the debtors object to the priority and nondischargeability status of a portion of the claim filed by Farmers Alliance Mutual Insurance Company (Farmers Alliance) and the propriety of an unsecured claim for attorney fees made by Farmers Alliance.

The debtors are represented by John E. Bohannon, Topeka, Kansas. Farmers Alliance is represented by J. Steven Pigg of Fisher, Patterson, Sayler & Smith, Topeka, Kansas.

The issues presented for determination are:

1. Does 11 U.S.C. § 509(a) extend to sureties.

2. When a surety satisfies the debtor's obligation to a creditor, which entity is entitled to file the proof of claim.

3. When a surety is subrogated to the claim of a priority claimant, is the surety's claim also a priority claim.

4. Can a surety with subrogation rights assert a priority claim because of an assignment of the priority claimant's rights.

5. When a surety is subrogated to the rights of a tax claimant with a nondischargeable claim under 11 U.S.C. § 523(a)(1)(A), is the surety's claim also nondischargeable.

6. Is an unsecured claim for attorney fees pursuant to an agreement of indemnification allowable under Kansas law or 11 U.S.C. § 506(b).

7. Was the automatic stay violated by the surety making a payment on the debtor's behalf to the state after the debtor's bankruptcy petition was filed.

The parties have submitted the issues on stipulation and briefs, and the Court is ready to rule.

## FINDINGS OF FACT

The debtors filed their chapter 7 petition in bankruptcy on September 24, 1980. The Kansas Department of Revenue (State) was scheduled as a priority claimant with claims of $2,059.99 and $5,051.22, based on fuel taxes owed by Jerry Dean Woerner, d/b/a Woerner Service Station (debtor). The

Farmers Alliance Mutual Insurance Company (Farmers Alliance) was scheduled as an unsecured claimant, with claims of $5,000 and $3,000.

In the debtor's service station business, he was required to pay State fuel taxes. Farmers Alliance wrote a bond in favor of the debtor as principal, and payable to the State Director of Taxation. Under the provisions of the bond, Farmers Alliance was obligated to satisfy the debtor's fuel tax obligations if the debtor defaulted.

The debtor defaulted on his taxes and on September 29, 1980 Farmers Alliance issued a draft payable to the State totalling $7,559.99 to satisfy the debtor's fuel tax obligations.

On October 13, 1980 Mark Beshears, Director of Taxation in Kansas, issued a document to Farmers Alliance assigning all rights in the State's claim in the debtor's bankruptcy proceeding.

On October 21, 1980 Farmers Alliance filed a proof of claim claiming $7,559.99 as a sixth priority claimant, and $2,519.99 as an unsecured attorney fee owed by the debtor under a contract for indemnification, in which the debtor agreed,

*to indemnify ... the* [insurance] *company from and against any liability and all ... counsel fees and expenses of whatever kind or nature which said company shall at any time sustain or incur ... by reason ... of said company having become surety ....*

The State never filed a proof of claim. Payment to the State, and assignment of the State's rights were made without notice to the Bankruptcy Court.

## CONCLUSIONS OF LAW

■ To secure a payment from a debtor, a creditor will often require the participation of a third party or surety. The surety promises to pay the debtor's obligation if the debtor defaults, and the surety's obligation is unaffected by the debtor's filing of a petition in bankruptcy. § 524(e). Nevertheless, when the suretyship arrangement is executed by the three parties, the ultimate loss is intended to fall on the debtor because the surety becomes a creditor of the debtor when payment is made on the debtor's behalf, and the debtor usually signs a contract of indemnification promising to repay any amounts the surety advances on the debtor's behalf. Section 509(a) recognizes this arrangement and grants to the third party a right of subrogation to the creditor's claim when payments on behalf of the debtor are actually made. The subrogation rights under § 509(a) extend to both co-debtors and sureties. *In Re Missionary Baptist Foundation of America, Inc.*, 12 B.R. 570, 7 B.C.D. 1106, 1107 (Bkrtcy.N.D. Tex.1981); S.Rep.No.95–989, 95th Cong., 2nd Sess. 73 (1978); Weintraub & Resnick, Allowance of Claims and Priorities Under the New Bankruptcy Code, 12 U.C.C.L.J. 291, 309, n. 90 (1980). Thus the surety with a right of *subrogation stands in the place of one whose claim he has paid ....* United States v. Munsey Trust Co., 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947).

■ The surety that makes full payments on the debtor's behalf,

*is the only one able to qualify as a creditor on the date of the filing of the petition and may, of course, file his claim in his own right.*

3 Collier on Bankruptcy ¶ 509.01, at 509–8 to –9 (15th Ed. 1981). See 11 U.S.C. § 501(b); Bankr.Rules 302(d)(1) and 304; *In Re Ingersoll Co.*, 148 F.2d 282 (10th Cir. 1945) (purchaser at tax sale occupies the position of tax claimant in filing claim against bankrupt). In the instant case, Farmers Alliance satisfied the debtor's obligations to the State, was subrogated to the State's claim, and filed a claim on its own right based on the claim the State would have had against the debtor.

■ To how much of the State's claim, however, is Farmers Alliance subrogated? Under § 507(a)(6), the State had a sixth priority claim for taxes due, and under § 523(a)(1)(A) the debt owed on the tax was nondischargeable. Under § 507(d), however, the subrogee of a priority claimant *does not partake of the priority status*

*given the claimant to which the subrogee is subrogated.* 3 Collier on Bankruptcy, *supra,* ¶ 507.07, at 507–49.

■ Farmers Alliance argues that by virtue of an assignment it took all of the State's rights as an assignee and not as a subrogee, and is not prevented by § 507(d) from claiming a sixth priority claim. Collier alludes to this argument when it states § 507(d) *does not speak to the issue of assigned claims.* Collier on Bankruptcy, *supra,* ¶ 507.07 at 507–49. The general rule, however, is that where a right to subrogation exists, *an assignment adds nothing to . . . [the] right . . . . (R)ecover(y) . . . is by virtue of a right in equity, not by virtue of a legal right under an assignment.* 73 Am.Jur.2d Subrogation § 111, at 670 (1974). It may be true that if an entity is truly an assignee § 507(d) would not bar assignment of the priority claim, see *In Re Missionary Baptist Foundation of America, Inc.,* 12 B.R. 570, 7 B.C.D. 1106 (Bkrtcy.N.D.Tex. 1981), but where a true subrogation is presented, as in the instant case, priority status is not allowed under § 507(d). *Id.* at 1107, 12 B.R. 570. Thus Farmers Alliance claims as a subrogee and is barred from having a priority claim by § 507(d).

■ Does Farmers Alliance as subrogee of a tax claim have a nondischargeable debt under § 523(a)(1)(A)? Although the Code specifically precludes a tax claim subrogee from receiving a priority claim under § 507(d), the nondischargeability of the subrogated claim is not expressly precluded by the Code. Cases under the Act held tax claim subrogees were subrogated to the *nondischargeable quality* of the claim. *Gilbert v. U. S. F. & G. Co.,* 180 F.Supp. 794 (M.D.Ga.1959), affirmed 274 F.2d 823 (5th Cir. 1960); *St. Paul-Mercury Indemnity Co. v. Donaldson,* 225 S.C. 476, 83 S.E.2d 159, 162 (1954), 8 Remington on Bankruptcy § 3308, at 163 (1955), 3 Collier on Bankruptcy, *supra,* ¶ 523.06 at 523–26. In *National Collection Agency, Inc. v. Trahan,* 624 F.2d 906 (9th Cir. 1980), however, the court held the debt owed to a tax subrogee is *discharged,* rejecting *Gilbert and St. Paul,* but this Court declines to follow the holding of

the Ninth Circuit and agrees with the greater weight of authority. Therefore, Farmers Alliance is subrogated to a nondischargeable debt under § 523(a)(1)(A).

■ Farmers Alliance makes an unsecured claim of $2,519.99 in attorney fees pursuant to its contract of indemnification with the debtor. See generally Note, Recovery of Attorney Fees in Kansas, 18 Washburn L.J. 535 (1979). K.S.A. § 58–2312 (1976) provides:

[I]*t shall be unlawful for any person or persons, company, corporation or bank, to contract for the payment of attorneys fees in any note, bill of exchange, bond or mortgage; and any such contract or stipulation for the payment of attorney's fees shall be null and void; and . . . no court in this state shall render any judgment, order or decree by which any attorney's fees shall be allowed or charged to the maker of any promissory note, bill of exchange, bond, mortgage or other evidence of indebtedness, by way of fees, expenses, costs or otherwise.*

(emphasis added)

A contract for indemnification recognizes, *an obligation resting on a party to make good any loss another has incurred while acting at his request or for his benefit,* . . .

*Missouri Pac. R.R. Co. v. City of Topeka,* 213 Kan. 658, 662, 518 P.2d 372 (1973). Thus the contract is a promise by the principal to indemnify the surety at the time the surety pays monies to the principal's creditor. Clearly, such a promise to pay is a promissory note or evidence of indebtedness, that is, a promise to pay a definite sum at a certain time. *Wilson v. Evans,* 185 Kan. 520, 345 P.2d 1002 (1959); *Gregory v. Williams,* 106 Kan. 819, 189 P. 932 (1920). Furthermore, K.S.A. § 58–2312 applies to cases involving personalty. *Marksheffel-Sill Motors v. Popejoy,* 135 Kan. 624, 11 P.2d 693 (1932). Therefore, under K.S.A. § 58–2312, the debtor, the maker of the instant promissory note, cannot be charged with attorney fees.

Under 11 U.S.C. § 506(b) attorney fees can be awarded to *an oversecured creditor regardless of contrary* [state] *law. In Re Carey*, 8 B.R. 1000, 7 B.C.D. 310 (Bkrtcy.S.D.Cal.1981); B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 6.1 at 6–4 (1980). But where the creditor is making an *unsecured claim*, there is no provision in the Code permitting the award of attorney fees. Without state or Code authorization, the claim for attorney fees is meritless and is denied.

Finally, the Court finds there was no violation of the automatic stay provisions of § 362 because no action was taken against or affecting the debtor's property, and because the surety's duty to pay was unaffected by the debtor's bankruptcy proceeding. § 524(e).

Therefore, Farmers Alliance has an unsecured, nondischargeable, nonpriority claim of $7,559.99. All other objections to Farmers Alliance's claim are sustained.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.